UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADVANTAGE INSURANCE SERVICES, INC., an Illinois corporation and ROBERT ROMANO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS ROULE and KELLY ROULE,<br><br>Defendants. | Civil Action No. _____<br><br>JURY DEMAND |

# COMPLAINT

Advantage Insurance Services, Inc. ("Advantage"), an Illinois corporation, and Robert Romano ("Romano"), individually and as managing shareholder of Advantage (collectively, "Plaintiffs"), assert the following claims against Defendants Thomas Roule ("Roule") and Kelly Roule (collectively, the "Roules" or "Defendants").

## PARTIES

1. Plaintiff Advantage is an Illinois corporation with its principal place of business located at 1730 Park Street, Suite 218, Naperville, Illinois 60563. Advantage is a non-public corporation owned by two shareholders, Romano and his wife, Connie Romano.

2. Plaintiff Romano is an individual who resides in DuPage County, Illinois.

3. Defendant Roule is an individual who resides in Williamson County, Tennessee.

4. Defendant Kelly Roule is an individual who resides in Williamson County, Tennessee.

## NON-PARTY ASSIGNMENT TO PLAINTIFF ADVANTAGE

5. JAM Trucking, LLC ("JAM"), a non-party to this Complaint, is a former

Advantage client who was defrauded by Roule. JAM suffered an injury in fact as a result of Roule's misconduct. On August 3, 2023, JAM assigned to Advantage all of JAM's claims that JAM may have against Roule arising out of or relating to the insurance services that Roule provided to JAM during the time period January 1, 2020 to June 1, 2023 ("JAM Assignment"). (*See* JAM Assignment of Claims Agreement, attached hereto as Exhibit A).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between: (1) Plaintiff, Advantage, a corporation organized and existing under the laws of Illinois with its principal place of business in Illinois, and Plaintiff Romano, an individual who is a citizen of Illinois; and (2) Defendant, Thomas Roule, an individual who is a citizen of Tennessee, and Defendant Kelly Roule, an individual who is a citizen of Tennessee. Further, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this District under Sections 1391(b)(1) and 1391(b)(2) of Title 28 of the United States Code because Defendants reside in this District and a substantial part of the events or omissions give rise to these claims occurred in this District.

## FACTUAL BACKGROUND

**Defendants' Premium Diversion Scheme**

8. Advantage is an insurance agency engaged in the business of selling personal and commercial insurance policies. Advantage has been an operational insurance agency since 2001.

9. Roule is a licensed insurance agent who worked as an insurance agent for Advantage from 2007 to 2023. In his position, Roule wrote commercial insurance policies for Advantage's clients.

10. Kelly Roule is Roule's wife. She is a licensed insurance agent who assisted Roule in the services he provided to Advantage.

11. In April 2023, Advantage and Romano learned that the Roules had been engaging in a premium diversion scheme that involved the Roules falsifying invoices to Advantage's clients, overcharging Advantage's clients for their insurance premiums, and fraudulently pocketing over $491,695 of Advantage's clients' funds (the "Premium Diversion Scheme").

12. As part of the Premium Diversion Scheme, Roule sent Plaintiffs fraudulent documents to prevent Plaintiffs from learning about the scheme. In addition, with respect to Roule's disclosures to Plaintiffs, Roule intentionally omitted information regarding the fraudulent payments that the Roules were collecting from Advantage's clients.

13. Further, the Roules accepted payments from Advantage's clients, to be forwarded to their respective insurance carrier, which the Roules embezzled and never sent to the insurance carrier.

14. For example, Roule accepted $392,807 from Advantage's client, JAM,[1] as the annual premiums for JAM's 2022 commercial insurance policy. JAM sent the funds to Roule with the understanding that Roule would transmit the funds to JAM's insurance carrier, Erie Insurance ("Erie"). However, Roule only paid $76,867 to Erie on behalf of JAM. Instead of transmitting the full premium payment, Roule embezzled the remaining funds of $316,050. The Roules never told, and purposefully omitted, informing Plaintiff that they charged $392,807 in premiums to JAM but only remitted $76,867 to Erie. As a result of the Roules' misconduct, JAM terminated its insurance contract with Advantage and is no longer an Advantage client.

---

[1] As stated in Paragraph 5, *supra,* JAM has assigned to Advantage all of JAM's relevant claims against Roule.

15. In another example of the Roules' Premium Diversion Scheme, the Roules accepted payments from an Advantage client ("Client A"), totaling approximately $161,773, to be forwarded to Client A's insurance carrier, Erie, as Client A's annual premium payment for their commercial insurance policy. However, the total premium charged by Erie was only $151,435 and Client A was therefore overcharged $10,000 more than what was owed to Erie. Worse yet, not a penny of Client A's payments of $161,773 to the Roules was ever transmitted by the Roules to Erie. Instead, all the funds were embezzled by the Roules. The Roules never told, and purposefully omitted, informing Plaintiff that they charged $161,773 in premiums to Client A but did not remit the funds to Erie. As a result of the Roules' misconduct, Client A will be terminating its insurance contract with Advantage and will no longer be an Advantage client.

16. When Erie discovered the Roules' fraud, Erie began withholding commissions due to Advantage to offset the funds that the Roules had embezzled from Advantage's clients.

17. As a result of Defendants' fraudulent conduct, Erie has withheld $102,761.57 of Advantage's commissions. Further, Erie has indicated it will continue to withhold Advantage's commissions each month to offset the funds that the Roules embezzled as part of the Premium Diversion Scheme.

18. In a letter from Erie to Advantage, Erie stated that it "has identified several instances in which one of your agency's producers, Tom Roule, in concert with Business Insurance Services, Inc. ("BIS") invoiced customers for premium due (in some cases, more than the premium due) on Erie policies written through your agency, collected payment from the customer, and failed to remit the premium to Erie." (*See* Erie Letter to Advantage, dated June 1, 2023, attached hereto as Exhibit B).

19. Erie's investigation into Roule led them to alert the Tennessee Department of Commerce and Insurance to inform them of Roule's fraudulent conduct. (*See* Erie Letter to Tennessee, dated June 7, 2023, attached hereto as Exhibit C).

20. As a result of Defendants' fraudulent conduct, Erie terminated its contract with Advantage. Erie's termination of the contract will result in business losses to Advantage in an amount no less than $500,000.

21. When Plaintiffs discovered Defendants' misconduct, Romano and Roule had several phone calls to discuss Roule's misconduct.

22. During these phone calls, Roule admitted to engaging in the Premium Diversion Scheme and perpetrating his related fraudulent conduct.

**Business Insurance Services**

23. In 2019, BIS was formed. BIS is an insurance agency engaged in the business of selling personal and commercial insurance policies.

24. In April 2022, Romano was transferred 100 shares of BIS, making Romano an equal shareholder with Roule, each owning 50% of BIS. As a 50% shareholder, Romano was entitled to 50% of the commissions that BIS earned. In addition, Romano and Roule formed an oral contract in which: (1) Roule agreed to pay Romano 50% of BIS's commissions in return for Romano's services; and (2) Roule agreed to pay Romano $630 per month for the Applied Management System ("Applied") in return for Romano maintaining the relationship with Applied and permitting Roule to use the Applied platform.

25. In 2022, Roule purportedly paid Romano 50% of BIS's commissions.

26. However, in January 2023, Roule stopped paying commissions owed to Romano.

27. Roule owes Romano at least $20,000 in commissions.

28. In addition, pursuant to the oral contract, Roule paid Romano $630 per month for the Applied platform in 2022.

29. However, in April 2023, Roule stopped sending Romano the monthly payments for Applied.

30. As a result, Roule owes Romano $3,014 for the costs of Applied.

## CAUSES OF ACTION
### COUNT I
### FRAUD
### (Against Roule)

31. Plaintiffs incorporate the allegations set forth in Paragraphs 1-30 of the Complaint as if fully restated herein.

32. As alleged above, Roule intentionally or with reckless disregard for the truth made false representations or omissions to Plaintiffs, including, but not limited to, providing Plaintiffs falsified business documents and not disclosing to Plaintiffs that Roule was accepting payments from Advantage clients that were made pursuant to falsified documents.

33. Roule knew that his representations were inaccurate, false and material.

34. To their detriment, Plaintiffs relied upon Roule's material misrepresentations.

35. Roule's misrepresentations constitute fraud and caused Plaintiffs damages for which Plaintiffs seek to recover.

### COUNT II
### FRAUD
### (Against Roule)

36. Plaintiffs incorporate the allegations set forth in Paragraphs 1-35 of the Complaint as if fully restated herein.

37. As alleged above, Roule intentionally or with reckless disregard for the truth made false representations or omissions to JAM, including, but not limited to, sending JAM falsified

invoices regarding the insurance premiums owed by JAM and by telling JAM that he would transmit JAM's premium payments to Erie and instead embezzling JAM's funds.

38. Roule knew that his representations were inaccurate, false and material.

39. To its detriment, JAM relied upon Roule's material misrepresentations.

40. Roule's misrepresentations constitute fraud and caused JAM damages for which Advantage seeks to recover pursuant to the JAM Assignment.

## COUNT III
## CIVIL CONSPIRACY TO COMMIT FRAUD
### (Against the Roules)

41. Plaintiffs incorporate the allegations set forth in Paragraphs 1-40 of the Complaint as if fully restated herein.

42. From January 2021 to the present, the Roules acted as a combination of two entities.

43. The conduct of the Roules constitutes civil conspiracy.

44. As described in further detail above, the Roules formed an agreement and conspired to perpetuate the Premium Diversion Scheme, at the expense of Plaintiffs and JAM.

45. Kelly Roule was aware that Roule made fraudulent representations to Plaintiffs and JAM regarding the Premium Diversion Scheme and embezzlement of funds.

46. As a proximate cause of the Roules' Premium Diversion Scheme and conspiracy, Plaintiffs and JAM have sustained and continue to sustain direct and consequential damages.

47. Given the Roules willful and malicious behavior, punitive damages should be assessed against them.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
## (Against Roule)

48. Plaintiffs incorporate the allegations set forth in Paragraphs 1-47 of the Complaint as if fully restated herein.

49. As an insurance agent for Advantage, Roule had a fiduciary duty to Advantage.

50. Roule breached his fiduciary duty to Plaintiffs by engaging in the Premium Diversion Scheme.

51. As a proximate result of Roule's breach of fiduciary duty, Plaintiffs have suffered injuries including, but not limited to, significant loss of funds.

52. For the reasons set forth above, Plaintiffs are entitled to a judgment for compensatory and punitive damages as a result of Roule's breach of his fiduciary duty.

## COUNT V
## BREACH OF FIDUCIARY DUTY
## (Against Roule)

53. Plaintiffs incorporate the allegations set forth in Paragraphs 1-52 of the Complaint as if fully restated herein.

54. As the insurance agent for JAM, Roule had a fiduciary duty to JAM.

55. Roule breached his fiduciary duty to JAM by embezzling JAM's insurance premiums.

56. As a proximate result of Roule's breach of fiduciary duty, JAM has suffered injuries including, but not limited to, significant loss of funds.

57. For the reasons set forth above, Plaintiffs are entitled to a judgment for compensatory and punitive damages as a result of Roule's breach of his fiduciary duty.

## COUNT VI
## CONVERSION
### (Against the Roules)

58. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 of the Complaint as if fully restated herein.

59. Defendants have intentionally retained funds belonging to JAM.

60. JAM is entitled to immediate possession of its property.

61. Defendants are currently in possession of JAM's property, which they have wrongfully converted for their personal benefit.

62. As a direct and proximate result of Defendants' conversion, JAM has suffered damages in an amount to be determined at trial and which Advantage seek to recover pursuant to the JAM Assignment.

63. Based the foregoing conduct, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, JAM is entitled to an award of punitive damages, which Advantage seeks to recover pursuant to the JAM Assignment.

## COUNT VII
## NEGLIGENT MISREPRESENTATION
### (Against the Roules)

64. Plaintiffs incorporate the allegations set forth in Paragraphs 1-63 of the Complaint as if fully restated herein.

65. Defendants' acts and misrepresentations constitute misrepresentations of material fact in the course of Plaintiffs' business and in transactions in which Plaintiffs had a pecuniary interest.

66. In the course of making such misrepresentations regarding the premiums Defendants had collected from Advantage's clients, Defendants misguided Plaintiffs in their business.

67. Defendants' acts and misrepresentations constitute misrepresentations of material fact in the course of JAM's business and in transactions in which JAM had a pecuniary interest.

68. In the course of making such misrepresentations regarding JAM's premiums, Defendants misguided JAM in their business.

69. Defendants did not exercise reasonable care or competence in communicating the false information to Plaintiffs and JAM.

70. Plaintiffs and JAM justifiably relied upon Defendants' misrepresentations to their detriment and suffered substantial damages for which Plaintiff seeks recovery.

## COUNT VIII
## COMMON LAW AND STATUTORY INTERFERENCE WITH CONTRACT
### (Against the Roules)

71. Plaintiffs incorporate the allegations set forth in Paragraphs 1-70 of the Complaint as if fully restated herein.

72. Advantage was under contract with its clients including, but not limited to, JAM and Client A.

73. Advantage was under contract with its insurance carrier, Erie.

74. Defendants had knowledge of Advantage's third-party contracts with its clients and with Erie.

75. As a result of Defendants' aforementioned fraud and misrepresentations perpetrated in furtherance of the Premium Diversion Scheme, Advantage's clients terminated their contracts with Advantage. Defendants acted with malicious intent.

76. In addition, as a result of Defendants' aforementioned fraud and misrepresentations perpetrated in furtherance of the Premium Diversion Scheme, Erie terminated its contract with Advantage. Defendants acted with malicious intent.

77. As a result of Defendants' tortious interference with these third-party contracts, Advantage is entitled to recovery of its actual damages in an amount to be proven at trial.

78. As a result of Defendants' statutory tortious interference of the contracts, pursuant to Tenn. Code Ann. § 47-50-109, Advantage is also entitled recovery of treble damages in an amount to be proven at trial.

## COUNT IX
## BREACH OF ORAL CONTRACT
## (Against Roule)

79. Plaintiffs incorporate the allegations set forth in Paragraphs 1-78 of the Complaint as if fully restated herein.

80. Beginning in 2022, Romano became a 50% shareholder in BIS.

81. In or around this time, Romano and Roule formed an oral contract in which: (i) Roule agreed to pay Romano 50% of BIS's commissions in return for Romano's services; and (ii) Roule agreed to pay Romano $630 per month for the Applied platform in return for Romano maintaining the relationship with Applied and permitting Roule to use the Applied platform.

82. In 2022, pursuant to the oral contract, Roule purportedly paid Romano 50% of BIS's commissions.

83. However, in January 2023, Roule stopped paying commissions owed to Romano, in breach of the oral contract.

84. In addition, pursuant to the oral contract, Roule paid Romano $630 per month for the Applied platform in 2022.

85. However, in April 2023, Roule stopped sending the Applied monthly payments to Romano, in breach of the oral contract.

86. In reliance on the oral contract, Romano performed all of his duties and fulfilled all of his obligations upon which the parties agreed.

87. Roule's breaches have caused Romano to suffer damages in an amount to be determined at trial.

## COUNT X
## REQUEST FOR PREJUDGMENT ATTACHMENT
### (Against the Roules)

88. Plaintiffs incorporate the allegations set forth in Paragraphs 1-87 of the Complaint as if fully restated herein.

89. Defendants owe Plaintiffs over $491,695 in compensatory damages.

90. Defendants have been absconding and/or fraudulent disposing of the property they purchased with funds Defendants fraudulently received.

91. Accordingly, pursuant to Tenn. Code Ann. § 29-6-101, Plaintiffs are entitled to a writ of attachment attaching the real property owned by the Roules, located in Tennessee, in order to preclude the Roules from dissipating or disposing of the asset, or otherwise hindering Plaintiffs' ability to collect on any judgment against the Roules.

**WHEREFORE**, Plaintiff Advantage, on its own behalf and as assignee of JAM, and Plaintiff Romano respectfully request that the Court:

A. Enter judgment for compensatory damages in favor of Plaintiffs against Defendants in an amount no less than $1,014,709;

B.	Enter judgment for punitive damages in favor of Plaintiffs and against Defendants in an amount to be determined by the trier of fact for Defendants' intentional, fraudulent, deceptive, malicious and reckless wrongful acts and omissions;

C.	Enter judgment for three (3) times actual damages, pursuant to Tenn. Code Ann. § 47-50-109, in favor of Advantage, and against Defendants, in an amount to be determined by the trier of fact for Defendants' tortious interference with contracts;

D.	A writ of attachment pursuant to Tenn. Code Ann. § 29-6-101;

E.	Award Plaintiffs their reasonable attorneys' fees and costs incurred in pursuing these claims;

F.	Enter judgment for prejudgment interest in favor of Plaintiffs and against Defendants in an amount to be determined;

G.	Award Plaintiffs such other and further relief, at law and in equity, as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED this 7th day of August, 2023,

        **GREENBERG TRAURIG, LLP**

        Kyle L. Flynn, pro hac vice forthcoming

        **BRADLEY ARANT BOULT CUMMINGS LLP**

        <u>s/Ryan N. Kilpatrick</u>
        Ryan N. Kilpatrick (BPR No. 039127)
        Bradley Arant Boult Cummings LLP
        1600 Division Street, Suite 700
        Nashville, Tennessee 37203
        P: 615.252.3824
        F: 615.252.6347
        rkilpatrick@bradley.com

        *Attorneys for Plaintiffs*