IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADVANTAGE INSURANCE SERVICES, INC., ET AL., | ) ) ) |
| Plaintiffs, | ) ) NO. 3:23-cv-00821 |
| v. | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE NEWBERN |
| THOMAS ROULE, ET AL., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' motion for default judgment. (Doc. No. 43). For the reasons discussed below, Plaintiffs' motion will be **GRANTED** in part.

### I.　　BACKGROUND

Plaintiffs Advantage Insurance Services, Inc. ("Advantage") and Robert Romano ("Romano") filed their Complaint against Defendants on August 7, 2023, asserting claims of fraud, civil conspiracy to commit fraud, breach of fiduciary duty, conversion, negligent misrepresentation, interference with contract, and breach of oral contract. (Doc. No. 1).

Advantage is an insurance agency that sells personal and commercial insurance policies. (*Id.* ¶ 8). Defendant Thomas Roule ("Roule") worked as an insurance agent for Advantage from 2007 to 2023 and drafted commercial insurance policies for clients. (*Id.* ¶ 9). Defendant Kelly Roule is Roule's wife and assisted Roule in the services he rendered to Advantage. (*Id.* ¶ 10).

Plaintiffs allege that in April 2023, they became aware that "the Roules had been engaging in a premium diversion scheme that involved the Roules falsifying invoices to Advantage's clients, overcharging Advantage's clients for their insurance premiums, and fraudulently pocketing over $491,695 of Advantage's clients' funds." (*Id.* ¶ 11). Plaintiffs also allege that Roule provided

fraudulent documents to Plaintiffs to prevent them from learning about the diversion scheme and intentionally omitted information regarding the purportedly fraudulent payments. (*Id.* ¶ 12). Further, Plaintiffs contend that the Roules accepted funds from clients to be transmitted to their insurance carrier and embezzled the funds. (*Id.* ¶ 13).

Plaintiffs allege that Roule collected $392,807 from JAM Trucking LLC ("JAM"), one of Advantage's clients, as a premium payment. (*Id.* ¶ 14). Plaintiffs allege that the Roules transmitted only $76,867 to the insurance carrier and kept the remaining amount of $316,050. (*Id.* ¶ 14). Plaintiffs allege that as a result of the Roules' conduct, JAM terminated its insurance contract with Advantage and is no longer a client. (*Id.*). Plaintiffs also state that JAM assigned to Advantage all of its claims that it may have against Roule "arising out of or relating to the insurance services that Roule provided to JAM during the time period January 1, 2020 to June 1, 2023." (*Id.* ¶ 5). Plaintiffs filed a copy of the assignment of claims agreement. (Doc. No. 1-1). Plaintiffs also allege that on a separate occasion, the Roules collected approximately $161,773 from another client to be transmitted to the client's insurance carrier. Plaintiffs contend that this amount included an overcharge of $10,000 and that, instead of transmitting the amount to the insurance carrier, the Roules embezzled the entire amount. (Doc. No. 1 ¶ 15).

Plaintiffs also allege that insurance carrier Erie Insurance ("Erie") withheld commissions due to Advantage to offset the funds embezzled by the Roules and that it has withheld $102,761.57 of Advantage's commissions as a result of the Roules' conduct. (*Id.* ¶¶ 16-17). Erie also terminated its contract with Advantage as a result of Defendants' conduct, which Plaintiffs allege "will result in business losses to Advantage in an amount no less than $500,000." (*Id.* ¶ 20).

In April 2022, Plaintiff Robert Romano acquired 100 shares of Business Insurance Services ("BIS") and became an equal shareholder of BIS with Roule. (*Id.* ¶ 24). Plaintiffs state that

"Romano and Roule formed an oral contract in which: (1) Roule agreed to pay Romano 50% of BIS's commissions in return for Romano's services; and (2) Roule agreed to pay Romano $630 per month for the Applied Management System ("Applied") in return for Romano maintaining the relationship with Applied and permitting Roule to use the Applied platform." (*Id.* ¶ 24). Plaintiffs allege that Roule stopped paying commissions to Romano in January 2023 and that Romano is owed "at least $20,000" in commissions. (*Id.* ¶¶ 26-27). Plaintiffs also allege that in April 2023, Roule stopped sending monthly payments for Applied and that Romano is owed "$3,014 for the costs of Applied." (*Id.* ¶¶ 29-30).

Defendants waived service on August 8, 2023. (Doc. Nos. 10, 11). The Court subsequently granted Defendants' former counsel's Motion to Withdraw on February 29, 2024. (Doc. No. 31). Copies of the filings in this case were mailed to Defendants' address, including Plaintiffs' Motion for Entry of Default. (Doc. Nos. 35, 38, 46, 48, 51, 53). There is no dispute that Defendants received a copy of the Order granting Plaintiffs' Motion for Entry of Default (Doc. No. 38) in May 2024, as both Defendants returned a certified mail receipt. (Doc. No. 39). On June 10, 2024 – more than two weeks after Defendants received a copy of the Order granting Plaintiffs' Motion for Entry of Default – Mrs. Roule filed a motion for extension of time to secure counsel and respond to the entry of default (Doc. No. 41). The Court granted Mrs. Roule's motion (Doc. No. 42), stayed all deadlines in this case for 45 days, and ordered Mrs. Roule to notify the Court whether she retained new counsel or will proceed pro se. On August 8, 2024 – 17 days after Defendants' deadline expired with no filing from Defendants on whether they were proceeding pro se or had retained counsel – Plaintiffs filed the pending Motion for Default Judgment (Doc. No. 43).

Notably, Defendants also failed to comply with the Court's February 29, 2024 Order providing that "should Defendants decide they desire to sell [Defendants' real property], they shall

3

notify Plaintiffs' counsel and the Court of that intention before taking any steps to sell or transfer title to that property. If this occurs, the Court will consider allowing Plaintiffs to renew their motion for pre-judgment attachment before Defendant can take any action concerning the property." (Doc. No. 30 at PageID # 144). On September 9, 2024, Defendants sold their real property in violation of the Court's Order. The Court held a show cause hearing on September 18, 2024, regarding Defendants' violation of the Court's Order. Defendants subsequently filed a motion to lift entry of default (Doc. No. 62), which was denied. (Doc. No. 65).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) does not set forth a standard to be applied in determining when a party is entitled to a judgment by default. The decision to enter a default judgment under Rule 55(b)(2) lies in the district court's sound discretion. *See Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2685 (4th ed.) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right…"). In determining whether to enter a default judgment, courts typically consider factors such as:

> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or are in doubt; how harsh the effect of a default judgment may be; whether the default was caused by a good-faith mistake or excusable neglect; and whether the plaintiff has engaged in a course of delay.

10A Wright et al. at § 2685. Once default has been entered, the defaulting party is deemed to have admitted all of the well pleaded factual allegations in the complaint concerning liability. *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

4

responsive pleading is required and the allegation is not denied."). However, the court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability. *Zinganything*, 158 F. Supp. 3d at 670.

Additionally, the district court must undertake an inquiry "to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). It is the plaintiff's burden to establish the amount of damages it is entitled to recover from the party who is in default. *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)). The Court may, but is not require to, conduct an evidentiary hearing on the issue of damages. *Vesligaj*, 331 F. App'x at 354; Fed. R. Civ. P. 55(b)(2).

### III. ANALYSIS

In light of the record as a whole, and based on the factors identified above, the Court finds that the relevant factors weigh, in principle, in favor of default judgment. The Court must still consider, however, whether the factual allegations of the Complaint support relief for Plaintiffs' claims.

**A. Fraud (Counts 1 and 2)**

To state a claim for fraud under Tennessee law, a plaintiff must establish: "(1) that the defendant made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the plaintiff reasonably relied on the representation; and (6) that the plaintiff was damaged by relying on the representation." *Hard Surfaces Sols., LLC v. Constr. Mgmt., Inc.*, 544 F. Supp. 3d 825, 831 (M.D. Tenn. 2021) (citing *Davis v. McGuigan*, 325 S.W.3d

5

149, 154 (Tenn. 2010)). Moreover, "Rule 9 requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake,' although '[m]alice, intent, knowledge, and other conditions of a person's state of mind may be alleged generally.'" (*Hard Surfaces Sols., LLC*, 544 F.Supp. 3d 825 at 830 (internal citation omitted). "[I]n complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Id.* (internal citations omitted).

Here, Plaintiffs allege that in April 2023, they learned that Defendants falsified invoices to Advantage's clients, overcharged clients for their insurance premiums, and took more than $491,695 of client funds. (Doc. No. 1 ¶ 11). Plaintiffs also allege that Defendant Thomas Roule sent Plaintiffs fraudulent documents and "intentionally omitted information regarding the fraudulent payments" that Defendants collected from Advantage's clients. (*Id.* ¶ 12). Plaintiffs also allege that Defendant Roule "intentionally or with reckless disregard for the truth made false representations or omissions to JAM, including but not limited to, sending JAM falsified invoices regarding the insurance premiums owed by JAM and by telling JAM that he would transmit JAM's premium payments to ERIE and instead embezzling JAM's funds." (*Id.* ¶ 37). As noted above, Plaintiffs provide two specific examples of Defendants' purported conduct in support of Plaintiffs' claims that Roule accepted premium payments from Advantage's clients, paid a portion of the premium to the insurance carrier, and kept the remaining amount for himself and that Defendants purposefully omitted information from Plaintiffs that they were doing so, including Roule's diversion of JAM's funds. (*Id.* ¶¶ 14-15). Plaintiffs also allege that Defendants provided falsified business documents and failed to disclose that Roule was taking payments from clients "that were made pursuant to falsified documents." (*Id.* ¶ 32). Plaintiffs allege that Roule knew that his

6

representations were inaccurate, false, and material and that Plaintiffs relied upon the material misrepresentations. (*Id.* ¶ 35). Plaintiffs also state that they were damaged by Roule's misrepresentations. (*Id.* ¶¶ 35, 40).

The Court finds that Plaintiffs have adequately pleaded facts to support a finding of liability on their claims for fraud.

## B. Civil Conspiracy to Commit Fraud (Count 3)

"Tennessee law defines a civil conspiracy 'as a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.'" *Boynton v. Headwaters, Inc.*, 564 F. App'x 803, 813 (6th Cir. 2014) (internal citations omitted). Moreover, "[a] conspiracy to defraud means a 'common purpose, supported by a concerted action to defraud, that each conspirator has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose.'" *Id.* (internal citations omitted).

Here, Plaintiffs allege that Defendants formed an agreement and "conspired to perpetuate the Premium Diversion Scheme, at the expense of Plaintiffs and JAM," that Defendant Kelly Roule "was aware that Roule made fraudulent representations to Plaintiffs and JAM regarding the Premium Diversion Scheme and embezzlement of funds" and that she "assisted Roule in the services he provided to Advantage." (Doc. No. 1 ¶¶ 44-45). The Complaint also alleges that "the Roules accepted payments from Advantage's clients, to be forwarded to their respective insurance carrier, which the Roules embezzled and never sent to the insurance carrier." (*Id.* ¶ 13).

The Court finds that Plaintiffs have adequately pleaded facts to support a finding of liability on their claim for civil conspiracy to commit fraud.

### C. Breach of Fiduciary Duty (Counts 4 and 5)

"In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Orlowski v. Bates*, 146 F. Supp. 3d 908, 927 (W.D. Tenn. 2015) (internal citation omitted). "Fiduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence." *Id.* (internal citations omitted).

Plaintiffs allege that as an insurance agent, Roule had a fiduciary duty to Advantage and JAM and breached his fiduciary duty by embezzling insurance premiums. (Doc. No. 1 ¶¶ 14, 49, 50, 54, 55). As set forth above, Plaintiffs specifically describe Defendants' conduct in purportedly diverting JAMs' funds (*Id.* ¶ 14), that Roule provided fraudulent documents to Plaintiffs to keep them from discovering the diversion, and that Defendants intentionally omitted information regarding the payments they were collecting from Advantage's clients. (*Id.* ¶ 12). Advantage also alleges that as a result of Defendants' conduct, clients and Erie have terminated their contracts with Advantage. (*Id.* ¶ 20).

The Court finds that Plaintiffs have adequately pleaded facts to support a finding of liability on their claims for breach of fiduciary duty.

### D. Conversion (Count 5)

"Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 614 (6th Cir. 2013) (citing *Ralston v. Hobbs,* 306 S.W.3d 213, 221 (Tenn.Ct.App.2009)).

Here, Plaintiffs allege that Defendants are in possession of JAM's funds and have wrongfully converted them for Defendants' personal benefit. (Doc. No. 1 ¶ 61). The Court finds the allegations in the Complaint, including that Defendants transmitted only a portion of JAM's premium payment to the insurance carrier and kept the remaining amounts, is adequate to support a finding of liability on Plaintiffs' claim for conversion.

**E. Negligent Misrepresentation (Count 6)**

"In Tennessee, a claim for negligent misrepresentation requires the plaintiff to show that: (1) the defendant supplied false information to the plaintiff; (2) the defendant did not exercise reasonable care in obtaining or communicating this information; and (3) the plaintiff justifiably relied on the information." *Dawit v. Meharry Med. Coll.*, 721 F. Supp. 3d 647, 671 (M.D. Tenn. 2024) (citing *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751–52 (6th Cir. 2014)).

Here, Plaintiffs allege that Defendants provided fraudulent documents to Plaintiffs, falsified invoices to Advantage's clients, overcharged Advantage's clients for their insurance premiums, and that Plaintiffs justifiably relied on Defendants' misrepresentations. (Doc. No. 1 ¶¶ 11, 12, 70). Accordingly, the Court finds that Plaintiffs have adequately pleaded facts to support a finding of liability on their claim for negligent misrepresentation.

**F. Interference with Contract (Count 7)**

A claim for interference with contract under Tennessee law requires a plaintiff to show "(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the

9

breach." *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 759 (M.D. Tenn. 2019) (internal citations omitted).

Here, Plaintiffs allege that Advantage had a contract with its clients, including JAM, and Erie. (Doc. No. 1 ¶¶ 72-73). Plaintiffs contend that Defendants had knowledge of Advantage's contracts with its clients and Erie, that Defendants acted with malicious intent, and that as a result of Defendants' conduct, Advantage's clients and Erie terminated their contracts with Advantage. (*Id.* ¶¶ 74-76). The Court finds that Plaintiffs have adequately pleaded facts to support a finding of liability on their claim for interference with a contract.

### G. Breach of Oral Contract (Count 8)

"In Tennessee, a breach of contract claim includes the following elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach." *Angela Clay v. University Cancer Specialist*, No. 2:09-CV-50, 2010 WL 11520006, at *2 (E.D. Tenn. Feb. 16, 2010) (citing *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

Here, Plaintiff Romano alleges that he entered into an oral contract with Defendant Roule in 2022 wherein "(i) Roule agreed to pay Romano 50% of BIS's commissions in return for Romano's services; and (ii) Roule agreed to pay Romano $630 per month for the Applied platform in return for Romano maintaining the relationship with Applied and permitting Roule to use the Applied platform." (Doc. No. 1 ¶ 81). Plaintiffs allege that in January and April 2023, Roule stopped making payments owed to Romano in breach of the oral contract. (*Id.* ¶¶ 83, 85). Romano contends he has suffered damages as a result of Roule's breach. (*Id.* ¶ 87). Accordingly, the Court finds that Plaintiff Romano has adequately pleaded facts to support a finding of liability of his claim for breach of oral contract.

**H. Prejudgment Attachment (Count 9)**

Plaintiffs' Complaint also states a claim for prejudgment attachment. However, in light of the Court's September 13, 2024 Order granting Plaintiffs' emergency motion for renewal of their motion for prejudgment attachment (Doc. No. 50), this request is moot.

**I. Damages**

Plaintiffs request damages in the amount of $477,823. (Doc. No. 43 at PageID # 182). In support, Plaintiffs submitted a declaration from counsel of record, Kyle Flynn. (Doc. No. 45). Mr. Flynn states that "Erie Insurance has withheld $305,451.15 of commissions that would otherwise be payable to Advantage," and that "Advantage's commissions have been withheld by Erie as a result of Defendants' Premium Diversion Scheme (as summarized in Plaintiffs' Complaint and Motion for Default Judgment), which includes the $161,773 of Advantage's client's funds that were embezzled by Defendants." (Doc. No. 45 at PageID # 188-189).

Plaintiffs also filed with the Complaint a letter from Erie to Plaintiff Romano dated June 1, 2023, wherein Erie provided notice that it was holding commissions payable to Advantage and would apply the commissions to the amounts owed to Erie "as a result of [Roule's] misappropriation for which we hold your agency accountable." (Doc. No. 1-2).

However, neither Mr. Flynn's declaration nor any other document submitted by Plaintiffs explains how Plaintiffs determined the total amount of $477,823. For example, Plaintiffs have not submitted documentation reflecting the amount of commissions withheld by Erie or documentation showing the partial amounts that Plaintiffs contend Roule transmitted to Erie.

The Court finds that the sole declaration filed in support of Plaintiffs' motion does not adequately establish that the above amount should be awarded as damages for Defendants' conduct. While the amount of damage need not be exact, neither can the damages be speculative.

Moreover, the Court has an obligation to ensure that there is a legitimate basis for a damages award and may award damages on default judgment only where the record adequately supports a basis for the award. *Zinganything*, 158 F. Supp. 3d at 675-76.

To be sure, Plaintiffs have provided some evidence in the form of the declaration and the June 1, 2023 letter from Erie to Plaintiff Romano (Doc. No. 1-2), but these documents are devoid of supporting documentation showing how the total amount was reached. Accordingly, Plaintiffs do not provide evidence from which the Court could conclude that the total amount is reasonable.

The Court is sympathetic to the difficulty of establishing an exact amount of damages due to the potential of some relevant records being outside of Plaintiffs' possession. However, given the exactness of the amount Plaintiffs claim they are due, it appears additional detail regarding the damages claims is available.

The Court does not require an exact accounting of damages. Even so, Plaintiffs must provide some basis from which the Court can conclude that the total amount is reasonable and there is a legitimate basis for the damages award. The record before the Court fails to provide such basis. Accordingly, the Court reserves ruling on the amount of damages pending supplementation of the record.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment (Doc. No. 43) is **GRANTED** in part. The Court will enter default judgment for liability on the claims for fraud, civil conspiracy to commit fraud, breach of fiduciary duty, conversion, negligent misrepresentation, interference with contract, and breach of oral contract.

Plaintiffs may file additional evidentiary support for their claimed damages on or before March 3, 2025. The Court will enter a final order after that date.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE